## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACY L. LINDSEY,** | ) | |
| **AIS # 00189896,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:22-00492-KD-N** |
| | ) | |
| **JOHN CROW,** | ) | |
| ***Correctional Warden III,*** | ) | |
| ***Elmore Correctional Facility,*** | ) | |
| ***Alabama Department of*** | ) | |
| ***Corrections,***[1] | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Tracy L. Lindsey, an Alabama prisoner proceeding without counsel

(*pro se*), initiated this action by filing a petition for a writ of habeas corpus under 28

U.S.C. § 2254 dated December 3, 2022, challenging his confinement pursuant to a

---

[1] "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. § 2242; see also § 2243 ('The writ, or order to show cause shall be directed to the person having custody of the person detained') … [L]ongstanding practice confirms that in habeas challenges to present physical confinement[,] the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). Accordingly, John Crow, current head warden of the facility where the petitioner is currently being held, *see* https://doc.alabama.gov/facility.aspx?loc=31 (last visited Feb. 10, 2026); https://doc.alabama.gov/inmatesearch.aspx (last visited Feb. 10, 2026), is automatically substituted for Rolanda Calloway as the respondent in this action under Federal Rule of Civil Procedure 25(d). *See also* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

The Clerk of Court is **DIRECTED** to update the docket accordingly.

criminal judgment handed down by the Circuit Court of Mobile County, Alabama. (Doc# 1).[2] He has also paid the requisite $5 filing fee for this habeas corpus action. *See* (Doc# 2); 28 U.S.C. § 1914(a). The assigned District Judge has referred the petition to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (12/15/2022 electronic reference notation). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

After conducting preliminary review of Lindsey's § 2254 petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the undersigned ordered the Respondent to file an answer or other appropriate response to the petition. (*See* Doc# 5). The Respondent timely filed an answer (Doc# 8) under Rule 5 of the Rules Governing Section 2254 Cases, which includes relevant portions of the record from Lindsey's state court proceedings. Lindsey has since presented various filings to the Court (Docs# 9, 10, 11, 12, 13).

## I.    *Procedural History*

After a jury convicted Lindsey of second-degree burglary in violation of Ala. Code § 13A-7-6(b), the Mobile County Circuit Court sentenced him, as a habitual

---

[2] Because Lindsey challenges a criminal judgment handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition. *See* 28 U.S.C. § 2241(d).

felony offender, to 45 years in prison (Circuit Court Case No. CC-2018-004720.00). (*See* Doc# 8-5, PageID.398 [Answer Exhibit E, 8/7/2020 Ala. Court of Criminal Appeals Memorandum, p. 1]). Per the evidence presented at trial, on September 20, 2017, Lindsey and another individual were captured on home security system video footage entering the garage of a couple's residence and taking a leaf blower while the husband was mowing the lawn and the wife was inside the residence. (*Id.*, PageID.398-399 [Answer Exhibit E, pp. 1-2]). The husband reported the incident to law enforcement, and a sheriff's deputy recognized Lindsey in the video footage. (*Id.*, PageID.399 [Answer Exhibit E, p. 2]). The stolen leaf blower was found inside Lindsey's residence. (*Id.*).

On direct appeal, the Alabama Court of Criminal Appeals (ACCA) affirmed the judgment by unpublished memorandum issued August 7, 2020 (Doc# 8-5), and it summarily overruled Lindsey's subsequent application for rehearing by order issued September 25, 2020 (Doc# 8-7 [Answer Exhibit G]). On July 9, 2021, the Supreme Court of Alabama summarily denied Lindsey's petition for certiorari review of the ACCA's decision, issuing its Certificate of Judgment that same day. (Doc# 8-9 [Answer Exhibit I]). The ACCA, presumably, did likewise. See Ala. R. App. P. 41(b) ("The timely filing of a petition for certiorari in the Supreme Court shall stay the issuance of the certificate of judgment by the courts of appeals, which stay shall continue until the final disposition by the Supreme Court. Upon the filing of a copy of an order of the Supreme Court denying the petition for certiorari, the certificate of judgment of the courts of appeals shall issue immediately.").

Meanwhile, on November 30, 2020, the U.S. District Court for the Middle District of Alabama received an unsigned, undated civil complaint from Lindsey postmarked 3 days prior. (S.D. Ala. Case No. 1:21-cv-00024 Doc# 1).[3] Construing the filing as bringing civil claims under 42 U.S.C. § 1983, the Middle District ordered the case transferred to this Court under 28 U.S.C. § 1406(a) (1:21-cv-00024 Docs# 3, 5), resulting in the opening of Case No. 1:21-cv-00024-KD-MU here. Upon review of the complaint following transfer, this Court observed that it could also be construed as a § 2254 petition for a writ of habeas corpus, and it ordered Lindsey to refile his § 2254 petition and/or his § 1983 complaint, depending on what claims he actually desired to assert, on the appropriate court forms by February 12, 2021. (1:21-cv-00024 Doc# 7). In response, Lindsey filed a court-form § 2254 habeas petition dated January 26, 2021 ("the 2021 Habeas Petition") challenging his Mobile County burglary criminal judgment (1:21-cv-00024 Doc# 11), and paid the requisite $5 filing fee. (1:21-cv-00024 Doc# 12). The Court ordered that the 2021 Habeas Petition be served on the respondent, who filed an answer asserting that the petition should be dismissed because Lindsey had failed to first exhaust his state court remedies. (1:21-cv-00024 Docs# 23, 31). The Magistrate Judge assigned to the 2021 Habeas Petition determined that it was a "mixed" petition that raised both exhausted and unexhausted claims. (1:21-cv-00024 Doc# 38). Noting that Lindsey had not yet at the time initiated a state court collateral challenge to his burglary judgment under Alabama Rule of Criminal Procedure 32, the Magistrate Judge recommended that

---

[3] "A court may take judicial notice of its own records…" *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

4

the 2021 Habeas Petition be dismissed without prejudice to allow Lindsey to exhaust his unexhausted habeas claims through an Alabama Rule 32 petition. (*Id.*). No party filed objections to that recommendation, and on October 6, 2021, the assigned District Judge adopted the recommendation and dismissed the 2021 Habeas Petition without prejudice. (1:21-cv-00024 Docs# 39, 40). Lindsey did not appeal that judgment.

In December 2021, Lindsey filed with the Mobile County Circuit Court an Alabama Rule 32 petition dated December 11, 2021 (hereinafter, "the First Rule 32 Petition"), along with a request to proceed *in forma pauperis*. (Doc# 8-13, PageID.480-495 [Answer Exhibit M—Part 1, pp. 5-20]).[4] On December 27, 2021, the circuit court denied the request to proceed *in forma pauperis*—noting that the prison account statement attached to the request indicated that Lindsey had "had $559.00 deposited on his books in the last 12 months, which is appreciably more than the filing fee of $260.00"—and ordered Lindsey to pay the filing fee within 45 days. (*Id.*, PageID.497 [Answer Exhibit M—Part 1, p. 22]). Lindsey filed a motion to reconsider the denial of his *in formal pauperis* request dated February 2, 2022, attaching a new prison account statement for the prior 12 months from February 2022. (*Id.*, PageID.498-501 [Answer Exhibit M—Part 1, pp. 23-26]). The circuit court denied the motion to reconsider on February 25, 2022, noting that the new account statement still indicated that Lindsey had received sufficient funds within

---

[4] Circuit court proceedings on the First Rule 32 Petition were docketed in Case No. CC-2018-004720.60.

5

the last 12 months in which to pay the filing fee, and ordered him to pay the fee within 45 days. (*Id.*, PageID.503 [Answer Exhibit M—Part 1, p. 28]).

On March 21, 2022, the circuit court received a handwritten document from Lindsey dated March 16, 2022, and entitled "Section 12-19-70 Written Notice In re: CC-2018-4720.60," claiming that as of the writing of that document that "the court has not made a written finding that [Lindsey] ha[s] the resources to pay the filing fee WITHOUT SUBSTANTIAL HARDSHIP and…that [his] affidavit of substantial hardship is deemed GRANTED by law." (*Id.*, PageID.506 [Answer Exhibit M—Part 1, p. 31]).[5] The next day, the circuit court entered an order noting the "Section 12-

---

[5]

> (c) If, within 90 days of the filing, the court does not make a written finding that the party claiming hardship has the resources to pay the fee without substantial hardship, the hardship shall be deemed granted.
>
> (d) If a hardship is granted pursuant to subsection (c), the party claiming the hardship shall file written notice with the clerk's office that 90 days has passed since the time of filing the affidavit of substantial hardship. Failure of the party claiming the hardship to file the notice under this subsection shall have no effect upon the granting of the affidavit of substantial hardship or the date the accompanying pleading shall be considered filed.
>
> (e) Pursuant to the notice requirement under subsection (d), the clerk of the court shall provide a form notice to the party filing an affidavit of substantial hardship and accompanying pleading. The notice shall be in substantially the following form:
>
> > "I, (insert name of affiant), declare that on (insert date the affidavit of substantial hardship and accompanying pleading were filed), I filed an affidavit of substantial hardship and (insert name of accompanying pleading). As of (insert 90-day

19-70 Written Notice" and directing the State to respond to Lindsey's Rule 32 petition by May 11, 2022. (*Id.*, PageID.509 [Answer Exhibit M—Part 1, p. 34]).

The State timely filed its response on the deadline (Doc# 8-14, PageID.520-532 [Answer Exhibit M—Part 2, pp. 45-57]), and six days later the circuit court entered an order dismissing the First Rule 32 Petition. (*Id.*, PageID.533-537 [Answer Exhibit M—Part 2, pp. 58-62]). Lindsey appealed that decision, but the ACCA ultimately dismissed the appeal on December 7, 2022, after determining the circuit court's order dismissing the First Rule 32 Petition was void because the circuit court did not have jurisdiction to entertain the petition—specifically, because Lindsey had never paid the requisite filing fee after the circuit court denied his requests to proceed *in forma pauperis*.[6] (Doc# 8-18, PageID.603-605 [Answer Exhibit P]). By that time, Lindsey had initiated the present habeas proceedings on December 3, 2022, the date he certifies he delivered the petition to prison official for

---

> expiration date), the court has not made a written finding that I have the resources to pay the fee without substantial hardship and I hereby notify the clerk of the court that my affidavit of substantial hardship is deemed granted by law.
>
> "_____ (Signature of Affiant)"

Ala. Code § 12-19-70 (c)-(e).

[6] "[A]bsent the payment of a filing fee or the grant of a request to proceed in forma pauperis, the circuit court does not obtain jurisdiction over [a Rule 32] postconviction petition." *Whitson v. State*, 891 So. 2d 421, 422 (Ala. Crim. App. 2004) (citing *Goldsmith v. State*, 709 So. 2d 1352 (Ala. Crim. App. 1997)). *Accord Ex Parte Mays*, 317 So. 3d 1032, 1036 (Ala. Crim. App. 2020) ("[C]ircuit courts do not obtain subject-matter jurisdiction over a Rule 32 petition 'without first collecting a docket fee or granting a proper request to be allowed to proceed in forma pauperis.'" (quoting *Ex parte McWilliams*, 812 So. 2d 318, 321-22 (Ala. 2001)).

mailing. *See* (Doc# 1, PageID.12); *Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008) ("Under the federal 'mailbox rule,' a *pro se* federal habeas petition is deemed to be filed on the date it is delivered to prison authorities for mailing.").[7]

In dismissing the appeal of the dismissal of the First Rule 32 Petition, however, the ACCA noted that the First Rule 32 Petition "still stands as filed in the circuit court with its original filing date and awaits disposition." (Doc# 8-18, PageID.604). The ACCA stated that the circuit court should give Lindsey a reasonable amount of time to pay the filing fee, and if Lindsey failed to comply the circuit court could then direct the circuit clerk to return the First Rule 32 Petition "to Lindsey for lack of jurisdiction to consider the filing." (*Id*.).

The same day as the appeal was dismissed, the circuit court entered an order directing Lindsey to pay the filing fee for the First Rule 32 petition within 30 days. (Doc# 8-20, PageID.607 [Answer Exhibit R]). On February 1, 2023, the circuit court granted Lindsey's motion for more time to pay the filing fee, granting him an additional 14 days from the date of that order. (Docs# 8-21 & 8-22 [Answer Exhibits S & T]). Lindsey did not pay the filing fee as directed. Instead, around July 2023 he wrote a letter to the ACCA, which construed it as a "petition for a writ of

---

[7] On October 17, 2022, the Clerk of Court received a letter from Lindsey in the 2021 Petition case. (*See* 1:21-cv-00024 Doc# 46). Two days later, the Magistrate Judge assigned to that case issued an order construing that letter "as an attempt at re-filing a § 2254 habeas corpus petition" following the dismissal of the 2021 Petition to allow for exhaustion of state court remedies. (1:21-cv-00024 Doc# 47). The Magistrate Judge directed the Clerk of Court to send Lindsey a copy each of this Court's form § 2254 petition and *in forma pauperis* motion, directed Lindsey "to complete these forms immediately and return them to this Court[,]" and directed the Clerk of Court to open a new case once those filings were received. (*Id*.). The present case appears to have resulted.

mandamus requesting that [the ACCA] direct Judge Jill Parrish Phillips to take some action on a Rule 32 petition for postconviction relief that [Lindsey] filed in the Mobile Circuit Court." (*See* attached Exhibits 1 & 2 [7/28/2023 & 11/29/2023 Orders of the ACCA]). On November 29, 2023, the ACCA dismissed Lindsey's construed mandamus petition on procedural grounds. (*See* attached Exhibit 2). That same day, the circuit court dismissed the First Rule 32 Petition for Lindsey's failure to pay the filing fee as ordered. (*See* attached Exhibit 3).[8] Lindsey did not appeal that dismissal or otherwise file anything else in relation to the First Rule 32 Petition. (*See* attached Exhibit 4 [Case Action Summary of First Rule 32 Petition proceedings]).

In the meantime, in July 2023, Lindsey filed a second Rule 32 petition (hereinafter, "the Second Rule 32 Petition"), commencing Mobile County Circuit Court Case No. CC-2018-004720.61. (*See* attached Exhibits 5 & 6). The circuit court

---

[8] All exhibits attached hereto have been obtained from the publicly available dockets of Lindsey's state circuit court criminal cases accessed through Alabama's online court docket access portal, Alacourt.com, and were filed/entered after the Respondent filed its answer in this case. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("It recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." (citation and quotations omitted)); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-53 (11th Cir. 2020) (per curiam) ("State court records of an inmate's postconviction proceedings" may be judicially noticed in federal habeas case, so long as parties have opportunity to be heard on the propriety of such notice). As will be explained, Lindsey will have the opportunity to submit objections to this Report and Recommendation, and thus may be heard on the propriety of judicial noticing the state court documents attached hereto.

granted Lindsey's request to proceed *in forma pauperis* in that case and directed the State to respond to the Second Rule 32 Petition. (*See* attached Exhibit 5). The State timely did so on September 18, 2023. (*See* attached Exhibit 7). One day later, the circuit court dismissed the Second Rule 32 Petition. (*See* attached Exhibit 8). Lindsey appealed that dismissal to the ACCA, which affirmed by unpublished memorandum decision issued April 26, 2024, holding that the Second Rule 32 Petition was time-barred under Alabama's one-year limitations period for bringing Rule 32 petitions, Ala. R. Crim. P. 32.2(c), and that Lindsey had improperly attempted to assert new Rule 32 claims for the first time on appeal. (*See* attached Exhibit 9). The ACCA then issued its Certificate of Judgment for that decision on May 15, 2024 (*see* attached Exhibit 10), 19 days after the issuance of its affirmance memorandum, indicating that Lindsey did not timely file an application for rehearing with the ACCA. *See* Ala. R. App. P. 41(a)(1) ("The certificate of judgment of the court shall issue 18 days after the entry of judgment unless the time is shortened or enlarged by order…In the courts of appeals, the timely filing of an application for rehearing will stay the issuance of the certificate of judgment until disposition of the application unless otherwise ordered by the court. If the application is denied, the certificate of judgment shall issue 18 days after entry of the order denying the application unless the time is shortened or enlarged by order."). Lindsey has filed nothing further with the circuit court in relation to the Second Rule 32 Petition (*see* attached Exhibit 5), and there is no indication Lindsey has pursued further post-conviction relief in state court.

10

## II.    *Analysis*

The Respondent asserts in his answer that Lindsey's present petition is due to be dismissed for essentially the same reasons the 2021 Habeas Petition was dismissed—he has failed to exhaust his claims through a full round of appeal in his state Rule 32 proceedings. The undersigned agrees that all but arguably one of Lindsey's habeas claims are unexhausted, and further concludes that those unexhausted claims are now procedurally barred.

### a.  Procedural Default

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *accord Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007) ("The habeas statute requires applicants to exhaust all available state law remedies before filing a federal habeas petition."); 28 U.S.C § 2254(b)(1)(A). "Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011); *see also Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."). "The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010). "Consistent with the purpose of the exhaustion rule, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. 1728; *accord Ward*, 592 F.3d at 1156 ("[T]o exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral

review."). In the context of a habeas proceeding in the Alabama state courts, one complete round of Alabama's established appellate review process means that the claim must be presented on appeal to the Alabama Court of Criminal Appeals and on petition for discretionary review to the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359.

*Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1216–17 (11th Cir. 2022). Lindsey completed one such round of review on direct appeal, but in doing so he exhausted, at most, only one claim—a claim he does not appear to advance in his present habeas petition.

On initial appeal to the ACCA, Lindsey's appellate counsel raised two issues: (1) whether the trial courted erred in denying Lindsey's request for a trial continuance to give him time to retain another trial attorney, in violation of Lindsey's Sixth Amendment right to counsel of his choice, and (2) whether the trial court erred in failed to give a jury instruction on first-degree criminal trespass as a lesser-included offense. (See Doc# 8-3 [Answer Exhibit C—Lindsey's Opening Appellate Brief to ACCA]; Doc# 8-5, PageID.399 [Answer Exhibit E, p. 2] ("On appeal, Lindsey argues that the circuit court erred when it denied his request for a continuance to retain another attorney and when it failed to give a jury instruction on first-degree criminal trespass as a lesser-included offense."). In Lindsey's application for rehearing to the ACCA, however, his appellate counsel abandoned the jury-instruction claim and pressed only the denial-of-a-continuance claim. (Doc# 8-6 [Answer Exhibit 6]). Lindsey's subsequent petition for certiorari review to the Alabama Supreme Court, filed *pro se*, did not appear to raise any specific claims at all, instead conclusorily asserting that "there are many issues where the circuit

court erred during his trial." (Doc# 8-8 [Answer Exhibit H]). Arguably, this assertion abandoned the denial-of-a-continuance claim, since that action occurred prior to the start of trial, not "during [Lindsey's] trial." But even assuming Lindsey's *pro se* certiorari petition was sufficient to incorporate, and thereby raise, the issues presented to the ACCA, because Lindsey only raised the denial-of-a-continuance claim in his application for rehearing, only that claim was subject to "one complete round of Alabama's established appellate review process." *See* Ala. R. App. P. 39(c)(1) (subject to inapplicable exceptions, "[t]he  filing of an application for rehearing in the Court of Criminal Appeals is a prerequisite to review by certiorari in the Supreme Court…").

However, Lindsey has not asserted his denial-of-a-continuance claim in his present petition. Moreover, he failed to exhaust any other claims in his Rule 32 proceedings because, as detailed above, he did not appeal the dismissal of the First Rule 32 Petition for failure to pay the filing fee, and he did not pursue appeal of the dismissal of the Second Rule 32 Petition beyond initial review by the ACCA. And, as will be explained, he is now procedurally barred from further attempts at exhausting his habeas claims in state court.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). " 'The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures.' " *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1329 (11th Cir.

13

2021) (quoting *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotation mark omitted)). "When the petitioner fails to exhaust state-court remedies 'and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default ... the exhaustion requirement and procedural default principles combine to mandate dismissal,' and federal habeas relief is barred absent an applicable exception." *Id.* (quoting *Bailey v. Nagle*, 172 F.3d 1299, 1303, 1306 (11th Cir. 1999) (per curiam)). *Accord Henderson*, 353 F.3d at 898–99 ("A claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement' would now find the claims procedurally barred.' " (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991))).

Here, the only avenue Lindsey had to exhaust habeas claims after his direct appeal concluded was through a Rule 32 petition. *See* Ala. R. Crim. P. 32.4 ("A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule."). However, the ACCA affirmed the dismissal of the Second Rule 32 Petition as time-barred. If Lindsey now "brought his claim[s] as a new Rule 32 petition, it either would be barred by the statute of limitations, *see* Ala. R. Crim. P. 32.2(c), or dismissed as a

second or successive petition, *see* Ala. R. Crim. P. 32.2(b)[9,]" both of which are some of "Alabama's firmly established and consistently applied procedural grounds." *Clark*, 988 F.3d at 1329 (quotation omitted). *See also Henderson*, 353 F.3d at 899 (recognizing Alabama Rule 32.2(c)'s limitations period as a "firmly established and consistently applied procedural ground[]" precluding further exhaustion efforts and rendering habeas claims procedurally defaulted); *Hurth v. Mitchem*, 400 F.3d 857, 864 (11th Cir. 2005) ("The sole basis that Hurth has put forward to support his contention that Alabama's Rule 32.2(c) was not firmly established and regularly followed is that, at the time he failed to comply with it, that rule was not jurisdictional in nature. Having rejected Hurth's proposition that the violation of a rule must actually divest the state courts of jurisdiction to decide a claim before the rule will be respected in federal habeas proceedings, we reject his contention that his failure to comply with Rule 32.2(c) did not procedurally bar his ineffective assistance claim. It did.").[10] Because he did not exhaust any other claims in his Rule

---

[9] "If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice." Ala. R. Crim. P. 32.2(b).

[10] The pendency of Lindsey's federal habeas proceedings did not serve to toll or excuse the state statute of limitations for filing his Alabama Rule 32 petition. *See Kuenzel v. State*, 204 So. 3d 910, 917 (Ala. Crim. App. 2015) (holding that an

32 proceedings, and because he is now precluded from exhausting them via another Rule 32 petition, Lindsey's habeas claims are procedurally defaulted. And "[a] procedurally defaulted claim can support federal habeas relief in only two narrow situations." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).

### b. Cause and Prejudice

First, the petitioner may demonstrate cause and prejudice. Cause exists if there was "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986). Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel. *Id.*[11] In addition to cause, the petitioner must also

---

Alabama Rule 32 petitioner was not entitled to equitable tolling of the 1-year statute of limitations because his "pending federal habeas petition was not an extraordinary circumstance that prevented him from [timely] filing a Rule 32 petition").

[11]

Ineffective assistance during a stage where the petitioner had a right to counsel is a valid excuse for failing to follow a state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753–54, 111 S. Ct. 2546, 2566–67, 115 L. Ed. 2d 640 (1991). On the other hand, at stages where the petitioner had no right to counsel, "it is the petitioner who must bear the burden of a failure to follow state procedural rules." *Id.* at 754, 111 S. Ct. at 2567. Because a petitioner has no right to counsel during state collateral review, even grossly ineffective assistance at the collateral review stage, or no assistance at all, does not constitute cause to excuse a procedural default. *See In re Magwood,* 113 F.3d 1544, 1551 (11th Cir. 1997).

*Mize*, 532 F.3d at 1191. Because Lindsey "did not have a right to counsel" on state collateral review, *see Lane v. State*, No. CR-2022-0720, 2024 WL 5182373, at *12 (Ala. Crim. App. Dec. 20, 2024) (explaining that, except in cases involving a

> show prejudice: that "there is at least a reasonable probability that the result of the proceeding would have been different" had the constitutional violation not occurred. *Henderson v. Campbell,* 353 F.3d 880, 892 (11th Cir. 2003).

*Mize*, 532 F.3d at 1190.

Nothing in the record indicates that Lindsey can show cause for failing to exhaust his procedurally defaulted claims in state court. Even if Lindsey's appellate counsel should not have abandoned the jury-charge claim, or should have raised other claims, on direct appeal, Lindsey alone bears responsibility for not exhausting those claims in his Rule 32 proceedings, where he had no right to counsel. *See id.* at 1191-93 (even assuming Georgia habeas petitioner had the right to counsel in an earlier post-conviction proceeding, and that counsel there was ineffective for failing to raise claim, petitioner could show "no causal link" between that ineffectiveness and the petitioner's procedural default because petitioner could have still exhausted the claim by raising it in a later collateral proceeding where petitioner did not have the right to counsel, but failed to do so); *Dellinger v. Bowen*, 301 F.3d 758, 766–67, 767 n.10 (7th Cir. 2002) (cited favorably in *Mize* as "holding that even though habeas petitioner's direct appeal counsel may have been ineffective, petitioner had defaulted his underlying claim on both direct appeal and collateral attack, and the latter default could not be excused because petitioner had no constitutional right to an attorney during the collateral attack[,]" 532 F.3d at 1193).

---

sentence of death, "there is no automatic right to counsel during postconviction proceedings" in Alabama), he "is responsible for whatever errors were made in failing to assert the claim there." *Mize*, 532 F.3d at 1192.

17

In dismissing the 2021 Habeas Petition, this Court expressly advised Lindsey that he was required to first exhaust most of his habeas claims in state court by filing a Rule 32 petition and, if he was denied relief by the circuit court, pursuing a complete round of review of that denial through the state appellate system. (*See* 1:21-cv-00024 Doc# 38). Lindsey did not object to or appeal that determination, and by the time the 2021 Habeas Petition was dismissed on October 6, 2021, Lindsey had nine months—until July 9, 2022, one year from the date the Alabama Supreme Court, and therefore presumably the ACCA, issued their respective Certificates of Judgment in his direct appeal, *see supra*—in which to file a Rule 32 petition with the Mobile County Circuit Court. *See* Ala. R. Crim. P. 32.2(c).

Lindsey did timely file the First Rule 32 Petition, but it was ultimately dismissed because Lindsey failed to comply with the circuit court's orders denying him *in forma pauperis* status and directing him to pay the filing fee. Lindsey has not shown that the circuit court's orders finding that he had the ability to pay the $260 filing fee for the First Rule 32 petition were clearly erroneous or unreasonable. *See Ex parte Hurth*, 764 So. 2d 1272, 1274 (Ala. 2000) ("the trial court can require the payment of a docket fee when it finds that a Rule 32 petitioner is not indigent" (citing *Ex parte Thomas*, 723 So.2d 1261, 1262 (Ala. 1998))). The prison account statements Lindsey submitted to the circuit court reflect that, between December 2020 and December 2021, Lindsey had had a total of $579 deposited into his prison account, enough to pay the Rule 32 filing fee twice over. (Doc# 8-13, PageID.482, 500 [Answer Exhibit M-Part 1, pp.7, 25]). Indeed, between August and November

18

2021, Lindsey had a total of $240 deposited in his prison account, with another $20 deposited in December 2021 when he filed the First Rule 32 Petition and his *in forma pauperis* request was denied, providing the exact amount to pay the filing fee as directed. Neither Lindsey's initial *in forma pauperis* request nor his motion to reconsider provided any detail as to what prevented Lindsey from saving his prison funds for the filing fee.[12]

But even if the circuit court's denial of *in forma pauperis* status was erroneous, Lindsey could have challenged the circuit court's denial of indigent status through a petition for a writ of mandamus with the state appellate courts. *See Hurth*, 764 So. 2d at 1274 ("A writ of mandamus 'is the proper method by which to compel the circuit court to proceed on an in forma pauperis petition.' " (quoting *Goldsmith v. State*, 709 So. 2d 1352, 1353 (Ala. Crim. App. 1997))) (finding that Rule 32 petitioner Hurth "was indigent when he filed his petition for post-conviction relief" based on "the facts before" it and directing the circuit court "to vacate its order denying Hurth's motion to proceed *in forma pauperis* and…to permit Hurth to proceed with his Rule 32 petition without paying a docket fee"). While Lindsey did

---

[12] *See Cahill v. Rewerts*, No. 22-1525, 2022 WL 4228944, at \*2 (6th Cir. Sept. 13, 2022) ("Cahill's alleged inability to pay the state-court appellate filing fee does not excuse the default. An indigent habeas petitioner has a federal constitutional right of access to the courts, and therefore his inability to pay the filing fee may be cause to excuse a procedural default. *See Clifton v. Carpenter*, 775 F.3d 760, 767 (6th Cir. 2014). But here, as the district court found, Cahill had enough money in his inmate trust account pay the $375 appellate filing fee at the time he appealed the trial court's denial of his motion for relief from judgment. So reasonable jurists would not dispute the district court's conclusion that Cahill's default was not excused by his inability to pay the filing fee.") (single-judge order denying certificate of appealability).

write a letter to the ACCA which that court construed as a mandamus petition, Lindsey's failure to comply with a court procedural rule resulted in dismissal of that petition, and there is no indication Lindsey tried to seek reconsideration of that decision with the ACCA or pursue the issue further with the Alabama Supreme Court. He also did not appeal the dismissal of the First Rule 32 Petition for his failure to pay the fee. Rather, Lindsey appears to have attempted to go around the filing fee issue by filing the Second Rule 32 Petition. However, by the time he did so in July 2023, he was a year past the expiration of the 1-year statute of limitations.

While some of this delay was undoubtedly caused by the circuit court's erroneous dismissal of the First Rule 32 Petition on the merits and the resulting appeal, Lindsey contributed to this delay by submitting what appears to have been an improper declaration stating that his *in forma pauperis* request was deemed granted by operation of law under Code of Alabama § 12-19-70, misleading the circuit court into allowing the First Rule 32 Petition to proceed. However, an *in forma pauperis* request is only deemed granted "[i]f, within 90 days of the filing, the court does not make a written finding that the party claiming hardship has the resources to pay the fee without substantial hardship..." Ala. Code § 12-19-70(c). Here, the circuit court made two such written findings within that timeframe—on December 27, 2021, when it denied Lindsey's initial request to proceed *in forma pauperis* on the First Rule 32 Petition by noting that the prison account statement attached to the request indicated that Lindsey had "had $559.00 deposited on his books in the last 12 months, which is appreciably more than the filing fee of

$260.00[;]" and again on February 25, 2022, when it denied Lindsey's motion to reconsider the denial of *in forma pauperis* status by noting that the new attached account statement still indicated that Lindsey had received sufficient funds within the last 12 months in which to pay the filing fee. In light of Lindsey's motion for reconsideration, it is reasonably clear that Lindsey received at least the first written denial. Thus, his § 12-19-70 notice claiming that his *in forma pauperis* request was deemed granted was inappropriate, as the ACCA at least implicitly recognized when it dismissed the appeal of the first denial of the First Rule 32 Petition because Lindsey had nether been granted *in forma pauperis* status nor paid the filing fee.

In sum, Lindsey has failed to show that the circuit court's requirement that he pay the filing fee for the First Rule 32 Petition impeded his efforts to exhaust his habeas claims through that petition, and no other possible "cause" to excuse the procedural default of Lindsey's claims is apparent from the record. The state court record indicates that Lindsey had adequate access to funds to pay the filing fee, and even if that was not the case, Lindsey could have sought relief from the denial of *in forma pauperis* status through a mandamus petition with the state appellate courts, which he did not adequately pursue. Moreover, Lindsey substantially contributed to the delay that resulted in the Second Rule 32 Petition being untimely filed by submitting an improper § 12-19-70 declaration that misled the circuit court into proceeding on the merits with the First Rule 32 Petition despite its lack of jurisdiction to do so.

### c. Actual Innocence

> Even without cause and prejudice, the procedural default of a
> constitutional claim may be excused if enforcing the default would
> result in a fundamental miscarriage of justice. This exception applies if
> the petitioner can show that, in light of new evidence, it is probable
> that no reasonable juror would have convicted him. *Schlup v. Delo,* 513
> U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). By making
> this showing of actual innocence, the petitioner may overcome the
> procedural default and obtain federal review of the constitutional
> claim. *Id.*

*Mize*, 532 F.3d at 1190. As the Supreme Court has recognized, "the *Schlup* standard

is 'demanding' and seldom met…" *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.

Ct. 1924, 185 L. Ed. 2d 1019 (2013) (citing *House v. Bell*, 547 U.S. 518, 538, 126 S.

Ct. 2064, 165 L. Ed. 2d 1 (2006)).

> In establishing an actual innocence exception to procedural default, the
> Supreme Court explained that "new evidence" of actual innocence
> includes "evidence tenably claimed to have been wrongly excluded or to
> have become available only after the trial." *Schlup*, 513 U.S. at 328
> (quoting Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack
> on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court
> also observed that "[t]o be credible" an innocence claim must be based
> on "new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that was not presented at trial." *Id.* at 324. When the Court
> extended this "actual innocence" exception to the statute of limitations,
> it likewise referenced "new evidence." *McQuiggin*, 569 U.S. at 386.

*Stimpson v. Warden*, No. 22-10190, 2025 WL 484049, at *3 (11th Cir. Feb. 13, 2025)

(unpublished). Importantly, in evaluating an "actual innocence" claim, "[w]e ask

whether the evidence demonstrates 'factual innocence, not mere legal

insufficiency.' " *Id.* at *4 (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.

Ct. 1604, 140 L. Ed. 2d 828 (1998)).

Lindsey's claims of innocence go to the legal sufficiency of this conviction, rather than "factual" innocence of it. For instance, Lindsey repeatedly claims there is evidence the wife was not actually in the house at the time the leaf blower was stolen from the garage, thus negating an essential element of Alabama's second-degree burglary statute. (*See* Doc# 7, PageID.41-43). Nowhere in the record has Lindsey claimed he was not one of the individuals captured on video entering the garage and taking the leaf lower. And even if he has, Lindsey's own attestations of innocence are insufficient, by themselves, to establish entitlement to the *Schlup* gateway. *See McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("Oyd McCray's affidavit and testimony that he was not on Bessemore Street at the time of the murder adds little in the way of quality to his actual-innocence claim. A reasonable juror surely could discount his own testimony in support of his own cause. *See Riggins v. Norris*, 238 F.3d 954, 955 (8th Cir. 2001) (noting that court is 'certainly entitled to disbelieve [defendant's] self-serving testimony'); *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993) ('[W]e have repeatedly held that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.').").

Accordingly, Lindsey has failed to show "actual innocence" allow for consideration of his procedurally defaulted claims, which are due to be dismissed with prejudice.[13]

### d. Merits of the Exhausted Claim

Even giving Lindsey the benefit of the doubt that he has actually raised his one exhausted claim in the present habeas petition, he is due no relief on it. Because Lindsey's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012). The United States Supreme Court has repeatedly made clear that

> AEDPA sharply limits federal review of habeas claims raised by state prisoners. A federal court may grant habeas relief on a claim that a state court resolved on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). These standards require federal courts to give the "benefit of the doubt" to merits decisions issued by the courts of the sovereign States. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). AEDPA review provides an important but limited safeguard: It protects against " 'extreme malfunctions' " in the state courts' adjudication of constitutional claims. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178

---

[13] To be fair, at the time the Respondent filed the answer, the First Rule 32 Petition was still pending, and thus Lindsey was not then foreclosed from exhausting his claims through that petition. Accordingly, the answer only argued for dismissal for failure to exhaust rather than procedural default. As will be explained later, Lindsey will have an opportunity to submit objections to this recommendation. To the extent he wishes to present additional "cause and prejudice" or evidence of "actual innocence" to excuse his procedural default, he may do so during that time.

L.Ed.2d 624 (2011). So in order to obtain federal habeas relief, a state prisoner must "show far more" than " 'clear error.' " *Shinn v. Kayer*, 592 U.S. 111, 118, 141 S. Ct. 517, 208 L.Ed.2d 353 (2020) (*per curiam*) (quoting [*Virginia v.* ]*LeBlanc*, 582 U.S. [91,] 94, 137 S. Ct. 1726[, 198 L. Ed. 2d 186 (2017) (*per curiam*)]). The habeas claimant must instead establish that the state court "blunder[ed] so badly that every fairminded jurist would disagree" with the decision. *Mays*[ *v. Hines*], 592 U.S. [385,] 392, 141 S. Ct. 1145[, 209 L. Ed. 2d 265 (2021) (*per curiam*]. Only then is a decision "so lacking in justification" that its error precludes even the "possibility for fairminded" dispute. *Richter*, 562 U.S. at 103, 131 S. Ct. 770.

*Klein v. Martin*, No. 25–51, 607 U.S. --, 2026 WL 189976, at *4 (Jan. 26, 2026).

*Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 19-20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (" "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement. If this standard is difficult to meet—and it is—that is because it was meant to be.  [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal citations and quotations omitted)); *Woods v. Donald*, 575 U.S. 312, 316 135 S. Ct. 1372, 191 L. Ed. 2d 464  (2015) (per curiam) ("AEDPA's standard is intentionally ' " ' difficult to meet. ' " ' " (quoting *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).

The Court has further

explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at [419], 134 S. Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at [419], 134 S. Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 575 U.S. at 316.

Finally, "AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Burt v. Titlow,* [571] U.S. [12], 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013) (quoting 28 U.S.C. § 2254(d)(2)). In such cases, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)). Like the "unreasonable application" standard in § 2254(d)(1), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question ... that does not suffice to

supersede the [state] court's determination." *Id.* (alterations and quotation marks omitted).

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014).

As set out in the ACCA's memorandum decision on direct appeal,[14] after Lindsey was indicted on September 21, 2018, he retained counsel, but the circuit court allowed that counsel to withdraw from representation on April 30, 2019, because Lindsey failed to meet his financial obligations. (Doc# 8-5, PageID.399). Lindsey was ultimately appointed new counsel on May 29, 2019; trial was then scheduled to begin August 19, 2019, but was continued to September 9, 2019, on motion of the State. (*Id.*). "On the day of trial, Lindsey asked the circuit court if he could 'have a little more time to receive another attorney'[,] stat[ing]] that he did not feel like his counsel was representing him 'to his ability.' " (*Id.*). The circuit court advised Lindsey that it would proceed with jury selection but would not swear the jury in until after lunch to allow Lindsey more time to talk to his appointed counsel. (*Id.*, PageID.399-400).

---

[14] When the last state court to decide a prisoner's federal claim does not provide a reasoned explanation for denying relief, generally "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning[,]" unless the State can "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson v. Sellers*, 584 U.S. 122, 125-26, 138 S. Ct. 1188, 200 L. Ed. 2d 530 (2018). Because neither the Alabama Supreme Court's decision denying certiorari review nor the ACCA's decision denying rehearing was accompanied by a reasoned explanation, this Court "looks through" those decisions to the ACCA's initial decision affirming Lindsey's criminal judgment.

"After the jury was selected, the circuit court asked Lindsey if he had anything he wished to say…" (*Id.*, PageID.400). After conferring with Lindsey, his trial counsel stated:

> "Basically, he already said it before. He would like time to hire counsel. I'm not sure entirely what his issues are in that. It could be maybe his concern about, and we've already put the offer on the record, that it could be something else that somebody else might be able to negotiate, I'll just say it like that. I know the Court is not involved in plea negotiations between the sides. Anything else he would want to say goes to the facts of the case, et cetera, and I said you cannot talk about that. You don't want to talk about that. And I'm not going to bring those up either. They are facts or jury issues that he's bringing up to me about the facts of the case."

(*Id.*).

After engaging in a colloquy with the prosecutor and Lindsey's counsel, the circuit court denied Lindsey's request for a continuance, finding that (1) the "case was indicted a year ago" and that Lindsey had "had ample opportunity to retain counsel of [his] choice if [he] wished to[;]" (2) that Lindsey had not made a request for more time to retain counsel at the last court hearing before trial and had indicated he was "ready for trial[;]" and (3) that the "State and the Defense…have gone to considerable expense to get this case ready for trial [that ]day." (*Id.*, PageID.400-402). The ACCA affirmed, holding that Lindsey had failed to show "that the circuit court abused its discretion when it denied [his] motion for time to retain new counsel." (*Id.*, PageID.404). It found that "Lindsey had sufficient time prior to trial to retain counsel and had not done so[,]" that "Lindsey did not allege any conflict of interest or irreconcilable conflict nor did he present any exigent

circumstances to override the circuit court's need for the efficient and effective administration of justice[,]" and "that the circuit court adequately inquired into Lindsey's request and found it meritless." (*Id.* (quotation marks omitted)).

Lindsey has pointed to nothing indicating that the ACCA's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" and that decision did not involve an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. "The Sixth Amendment right to counsel guarantees a defendant 'both a fair opportunity to be represented by counsel of his own choice and a sufficient time within which to prepare a defense.'" *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005) (quoting *Gandy v. Alabama*, 569 F.2d 1318, 1321 (5th Cir. 1978)), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). The Supreme Court has recognized that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Thus, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects. [For instance,] a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Id.*

The Court has also "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, [*Wheat*], [486 U.S.] at 163-164, 108 S. Ct. 1692, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983)." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). "Not the least of [trial judges'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11–12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)). Importantly, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589.

As noted by the ACCA, trial commenced almost a year after Lindsey was indicted, giving him "sufficient time prior to trial to retain counsel." *Cf. United States v. Graham*, 643 F.3d 885, 894–95 (11th Cir. 2011) ("Before the trial began Graham had a year-and-a-half to decide to hire any lawyer he chose or to accept the services of his standby appointed counsel. If Graham failed to obtain what he considered to be ideal counsel, it is nobody's fault but his own…Eighteen months

furnished more than a fair opportunity for Graham to obtain counsel and to prepare for trial."). Lindsey also waited until the day of trial—after representing at the last pretrial hearing that he was ready for trial, and after the "State and the Defense…ha[d] gone to considerable expense to get this case ready for trial"—to express dissatisfaction with his appointed counsel and request more time to retain different counsel.[15] *Cf. United States v. Walford*, 295 F. App'x 354, 357 (11th Cir. 2008) (per curiam) (unpublished) ("Walford has failed to show that he was either deprived of the ability to choose counsel or that his due process rights were violated…The requested continuance would have almost doubled the overall length of the proceedings-from 75 to at least 135 days…Granting a continuance would have inconvenienced the court, with its busy trial schedule, and all the witnesses and lawyers who had made plans based on the 18 June date."); *United States v. Coleman*, 256 F. App'x 263, 266 (11th Cir. 2007) (per curiam) (unpublished) ("[A] continuance on the morning of trial would have inconvenienced the court, its docket, the citizens called for jury duty, and all of the witnesses, three of whom had come from out of state; two from South Carolina and one from Indiana."). However, Lindsey had already lost his initial retained counsel because he failed to pay for that counsel's services, and Lindsey gave no indication on the day of trial that his financial situation had improved to where retaining new counsel was reasonably

---

[15] The Eleventh Circuit Court of Appeals has recognized that a "defendant cannot use the right to counsel as a means to manipulate the court and cause delay: 'The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court.' " *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011) (quoting *United States v. Fowler*, 605 F.2d 181, 183 (5th Cir. 1979)).

possible so as to justify further delay of trial. *Cf. Graham*, 643 F.3d at 894 ("[O]n the first day of trial, Graham refused to go forward with the trial and said he wanted to be represented by counsel but he wanted some other lawyer and not his standby counsel. The other lawyers Graham had contacted indicated that he had not retained them. It is unlikely that, starting from scratch, they could have prepared for trial during the 10–day continuance that Graham requested anyway."). Moreover, Lindsey did not provide specific "compelling reasons" for his dissatisfaction with appointed counsel, instead offering only a vague assertion that he did not believe appointed counsel was representing him "to his ability." Given these circumstances, the ACCA acted well within the bounds of objective reasonableness under the foregoing established Supreme Court precedent when it affirmed the circuit court's denial of Lindsey's motion to continue.

In sum, all but arguably one of Lindsey's habeas claims are unexhausted and now procedurally defaulted, and, to the extent Lindsey has actually raised here the one claim he did exhaust in state court, that claim is without merit. Accordingly, Lindsey's habeas petition is due to be **DENIED** and **DISMISSED with prejudice**.

### e.    Certificate of Appealability

For habeas petitions brought by persons in state custody, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final

order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). For all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence

of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, the undersigned finds that Lindsey should be **DENIED** a certificate of appealability in connection with the dismissal of this habeas action. At the very least, Lindsey has failed to make a substantial showing of the denial of a constitutional right.[16]

### III.    *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Lindsey's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this action (Doc# 1) be **DISMISSED with prejudice**, that the Court **DENY** Lindsey a Certificate of Appealability in connection with this dismissal, and that such final judgment thereafter be set out by separate document in accordance with Federal Rule of Civil Procedure 58.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific

---

[16]    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection by the petitioner to the recommendation to deny a certificate of appealability, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Should this Court deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. Gen LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

### NOTICE TO *PRO SE* PETITIONER

In light of his *pro se* status, the petitioner is advised that "[a]ll persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." S.D. Ala. GenLR 83.5(a). S*ee also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* … litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.

35

These rules provide for sanctions for misconduct and for failure to comply with court orders."); *United States v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) ("A *pro se* [party] must follow the rules of procedure and evidence and the district court has no duty to act as his lawyer…" (citation omitted)). For instance, Federal Rule of Civil Procedure 11(a) requires that any paper filed with the Court be signed by a *pro se* party personally and provide that party's "address, e-mail address, and telephone number."[17] *See also* S.D. Ala. GenLR 5(a)(4) ("For filings by *pro se* litigants, the unrepresented party shall personally sign each document filed and shall include, directly beneath the signature line, his or her name, address and telephone number."). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a). *See also* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Repeated failures to follow this or any other court rule or order may result in additional sanctions, up to and including dismissal of this action. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d

---

[17] The plaintiff/petitioner must <u>handwrite</u> his signature in order to satisfy Rule 11(a). *See Becker v. Montgomery*, 532 U.S. 757, 763–64, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001) ("Becker maintains that typing one's name satisfies the signature requirement and that his original notice of appeal, containing his name typed above "(Counsel of Record)," met Civil Rule 11(a)'s instruction…[H]owever, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).").

1333, 1337 (11th Cir. 2005) (explaining that a court may dismiss an action on its own motion as a sanction for failure to obey rules and orders, under both Federal Rule of Civil Procedure 41(b) and the court's inherent authority); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

Under the Court's local rules, "[a]ny person proceeding *pro se* must, at all times during the pendency of the action to which he or she is a party, keep the Clerk informed of his or her current address and … must promptly notify the Clerk of any change of address … Failure to comply with this Rule may result in sanction, including dismissal of a *pro se* plaintiff's action…" S.D. Ala. GenLR 83.5(b). Additionally, any "request for Court action must be presented by motion and may not be presented by informal means such as a letter." S.D. Ala. GenLR 7.

**DONE** and **ORDERED** this the **10th** day of **February 2026**.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**